X FILED ___ LODGED
___ RECEIVED ___ COPY

JUL 0 8 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

JOHN S. LEONARDO
United States Attorney
District of Arizona
FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Fred.Battista@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> vs. <br><br> Randall Curtis Pruitt, <br><br> Defendant. | NO.  CR-15-00838-001-PHX-DJH <br><br> **I N F O R M A T I O N** <br><br> VIO: 18 U.S.C. § 1343 <br> (Wire Fraud) <br> Counts 1-2 |

THE UNITED STATES ATTORNEY CHARGES:

**BACKGROUND**

At all times relevant to this Information:

1.   Defendant RANDALL CURTIS PRUITT, hereinafter "defendant" was the holder of License No. 5660 which permitted him to practice "chiropractic" in the State of Arizona, and operated Arizona Back Institute, in Phoenix, Arizona.

2.   GE Money Bank, now known as Synchrony Bank, hereinafter "GE Money Bank," offered credit card accounts, through a program known as CareCredit, which patients could use to pay for medical care expenses. In order for medical care providers to be eligible to participate in the credit card program, providers were first required to undergo a pre-approval process which would then allow them to act as merchants and bill CareCredit for medical services provided to patients. Once this merchant approval

process was in place, patients of the medical care provider could, in most cases, apply for a CareCredit credit card through an application submitted by, or with the assistance of, the patient's medical care provider. Once the credit card account was approved with a specified credit limit, the patient could then use the card to pay for medical services furnished to them by their provider.

3. JP Morgan Chase, hereinafter "Chase," through the Chase Health Advance Program, hereinafter "Health Advance," offered a Health Advance line of credit which patients could use to pay for medical care expenses. In order for medical care providers to be eligible to participate in the line of credit program, providers were first required to undergo a pre-approval process which would then allow them to act as merchants and bill Health Advance for medical services provided to patients. Once this merchant approval process was in place, patients of the medical care provider could, in most cases, apply for a Health Advance line of credit through an application submitted by, or with the assistance of, the patient's medical care provider. Once the line of credit was approved with a specified credit limit, the patient could then use the line of credit to pay for medical services furnished to them by their provider.

## FRAUD SCHEME

5. From at least on or about May 27, 2010, through on or about January 14, 2011, defendant fraudulently established at least 27 separate CareCredit credit card accounts with GE Money Bank through the unauthorized use of the personal identifying information for 27 different individuals who were his patients. Once the accounts were established, defendant electronically submitted, from the State of Arizona, false claims for services he had not performed, and fraudulent double bills for services he had performed and was being paid for by other means, to GE Money Bank. Soon after each fraudulent billing, defendant was paid for the services, less a merchant related fee. All of the fraudulently obtained payments for nonexistent and double billed services were processed by GE Money Bank in a manner that required the electronic routing of all

account settlements and payments through JP Morgan Chase Bank NA in the State of Florida and ultimately into defendant's business account held at Chase in the State of Arizona.

6. From at least on or about May 27, 2010, through on or about January 14, 2011, the total of the limits for the CareCredit credit card accounts that defendant caused to be authorized was approximately $223,800.00 and the total amount of funds that defendant had fraudulently obtained from GE Money Bank was approximately $180,684.09.

7. From at least on or about September 1, 2010, through on or about January 14, 2011, defendant fraudulently established at least 29 separate Health Advance lines of credit accounts with Chase through the unauthorized use of the personal identifying information for 29 different individuals who were his patients. Once the accounts were established, defendant electronically submitted, from the State of Arizona, false claims for services he had not performed, and fraudulent double bills for services he had performed and was being paid for by other means, to Chase. Soon after each fraudulent billing, defendant was paid for the services, less a merchant related fee. All of the fraudulently obtained payments for nonexistent and double billed services were processed by Chase in a manner that required the electronic routing of all account settlements and payments through a Chase facility in the State of Florida and ultimately into defendant's business account held at Chase in the State of Arizona.

8. From at least on or about September 1, 2010, through on or about January 14, 2011, the total of the limits for the Health Advance lines of credit defendant fraudulently caused to be authorized was approximately $327,000.00 and the total amount of funds that defendant fraudulently obtained from Chase was approximately $258,000.00.

9. From at least on or about May 27, 2010, through on or about January 14, 2011, defendant fraudulently obtained a total of approximately $438,684.09 from GE

Money Bank and Chase as payment for services he never rendered and was not entitled to payment. As of the date of this Information, none of the funds have been returned.

11. Beginning at a time unknown, but at from at least on or about May 27, 2010, through on or about January 14, 2011, in the District of Arizona and elsewhere, defendant RANDALL CURTIS PRUITT did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

## COUNT ONE

11. The factual allegations contained in paragraphs 1 – 10 of this Information are incorporated by reference and re-alleged as if fully set forth herein.

12. On or about November 4, 2010, for the purpose of executing the subject scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, defendant RANDALL CURTIS PRUITT did knowingly transmit and cause to be transmitted, by means of wire communications, in interstate commerce between the State of Arizona and the State of Florida, materially false instructions related to the settlement and payment for services that defendant claimed he had rendered to P.T., a patient of defendant, and was entitled to payment, in the amount of $10,000.00, through the use of CareCredit credit card account number ending in 1556, held in the name of P.T., which credit card defendant had fraudulently obtained and was not authorized to use to claim a payment for medical services which he had not rendered and was not entitled to payment.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO

13. The factual allegations contained in paragraphs 1 – 12 of this Information are incorporated by reference and re-alleged as if fully set forth herein.

14. On or about January 14, 2011, for the purpose of executing the subject scheme and artifice to defraud and to obtain money by means of materially false and

- 4 -

fraudulent pretenses, representations and promises, defendant RANDALL CURTIS PRUITT did knowingly transmit and cause to be transmitted, by means of wire communications, in interstate commerce between the State of Arizona and the State of Florida, materially false instructions related to the settlement and payment for services that defendant claimed he had rendered to M.G., a patient of defendant, and was entitled to payment, in the amount of $12,000.00, through the use of Health Advance line of credit account number ending in 1172, held in the name of M.G., which line of credit defendant had fraudulently obtained and was not authorized to use to claim a payment for medical services which he had not rendered and was not entitled to payment.

All in violation of Title 18, United States Code, Section 1343.

Dated this 8th day of July, 2015.

JOHN S. LEONARDO
United States Attorney
District of Arizona

FREDERICK A. BATTISTA
Assistant U.S. Attorney